**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 10-cv-03077-WJM-KLM

AMAZING TECHNOLOGIES, LLC and
TC logiQ, INC.,

    Plaintiffs/Counterclaim Defendants/Third-Party Defendants,

v.

BLACKLODGE STUDIOS, LLC,
NICHOLIS BUFMACK,
RAOUL JOHNSON and
FRANK TSU,

    Defendants/Counterclaimants/Third-Party Plaintiffs, individually and derivatively on behalf of Amazing Technologies, LLC,

and

MARGARET TSU,

    Intervenor/Third-Party Plaintiff,

v.

THOMAS C. DANTZLER, JR. and
JARVIS WYATT,

    Third-Party Defendants.

---

**ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS
OR IN THE ALTERNATIVE TO COMPEL ARBITRATION**

---

Before the Court is Counterclaim Defendant TC LogiQ, Inc. and Third-Party Defendants[1] Thomas Danzler, Jr., and Jarvis Wyatt's Motion to Dismiss Pursuant to

---

[1] Defendants and Intervenor label all of their claims as "Counterclaims" and list Dantzler and Wyatt as "Counterclaim Defendants". (ECF No. 17.) However, because Dantzler and Wyatt were not originally parties to this action, the claims asserted against them are actually

Federal Rule of Civil Procedure 12(b)(1) or, in the Alternative, to Stay Proceedings and Compel Arbitration ("Motion").  (ECF No. 20.)  For the reasons set forth below, the Motion is granted in so far as it seeks an order compelling Intervenor/Third-Party Plaintiff Margaret Tsu's claims to arbitration and staying those claims.

## I.  LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(1) is to test whether the Court has subject-matter jurisdiction to properly hear the case before it.  Dismissal of a federal claim for lack of subject-matter jurisdiction "is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'"  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (quoting *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974)).  A motion to dismiss pursuant to Rule 12(b)(1) may take two forms: a facial attack or a factual attack.  When reviewing a facial attack on a complaint pursuant to Rule 12(b)(1), the Court accepts the allegations of the complaint as true.  *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).  When reviewing a factual attack on a complaint supported by affidavits and other documents, such as that at issue here, the Court makes its own factual findings and need not convert the motion to one brought pursuant to Fed. R. Civ. P. 56.  *Id.* at 1003.

---

third-party claims.  *Compare* Fed. R. Civ. P. 13 (counterclaims are brought against the opposing party) with Fed. R. Civ. P. 14 (third-party claims are brought against a nonparty).  Accordingly, Dantzler and Wyatt are Third-Party Defendants to this action while TC and Amazing are Counterclaim Defendants as to the claims asserted by the Defendants and Third-Party Defendants with respect to the claims asserted by Margaret Tsu.

## II.  FACTUAL BACKGROUND

Plaintiff TC LogiQ, Inc. ("TC") is a corporation based in Colorado Springs that performs background screens for customers.  (Am. Compl. (ECF No. 7) ¶ 17.)  TC is principally owned by Third-Party Defendants Thomas Dantzler and Jarvis Wyatt.  (*Id.* ¶ 18.)  In 2007, TC entered into independent contractor agreements with Defendants/Counterclaimants Raoul Johnson and Nicholis Bufmack, who are both graduate students in computer science.  (*Id.* ¶¶ 24, 27.)  Johnson and Bufmack were to provide various computer programming, database maintenance and security, and website redesign services for TC.  (*Id.* ¶¶ 24, 31.)

In early 2008, Dantzler and Wyatt entered into an agreement with Johnson and Bufmack to create applications for mobile phone devices, specifically a voice-to-text ("V2T") application.  (*Id.* ¶¶ 38, 42.)  To further this business arrangement, TC, Bufmack, and Johnson formed Amazing Technologies, LLC ("Amazing") in May 2009.  (*Id.* ¶ 46.)  TC held 80% of the shares in Amazing while Bufmack and Johnson each had 10%.  (*Id.* ¶ 48.)  On May 22, 2009, Amazing filed a patent application for the V2T technology listing Dantzler, Wyatt, Johnson, and Bufmack as the inventors.  (*Id.* ¶ 49.)  Bufmack and Johnson were working towards a release date of August 2009 for the V2T technology.  (*Id.* ¶ 50.)

In August 2009, Amazing approached Intervenor/Third-Party Plaintiff Margaret Tsu about funding the development of the V2T technology.  (Counterclaims (ECF No. 17) ¶ 26.)  Jarvis and Wyatt made representations to Margaret Tsu about TC's financial viability and ability to repay the loan if Amazing defaulted.  (*Id.* ¶ 28.)  Margaret Tsu and

TC entered into a loan agreement ("Agreement") that called for Tsu to loan Amazing $325,000. Amazing was to repay the loan with interest no later than September 30, 2010 and TC served as a corporate guarantor of the loan. (*Id.* ¶ 27.) The Agreement was signed by Margaret Tsu, Dantzler as CEO of Amazing, and Dantzler as CEO of TC. (*Id.* ¶ 29; ECF No. 20-1.)

Around the same time the Agreement was entered, Margaret Tsu's son, Frank Tsu, was made Senior Vice President of Amazing and given a 10% interest in the corporation. (Counterclaims ¶ 24.) As TC held 70% of Amazing's shares, it remained the managing partner. (Am. Compl. ¶ 56.)

Through the fall of 2009, Bufmack missed deadlines for releasing the V2T technology. (*Id.* ¶¶ 57-58.) In December 2009, Bufmack informed the members of Amazing that V2T was not viable. (*Id.* ¶ 61.) However, while working on V2T, Bufmack had created various spin-off technology. (*Id.* ¶ 63.) Amazing began focusing on this spin-off technology, including a variety of games and other applications for cellular telephones. (*Id.*)

Relations between the members of Amazing soured during the summer of 2010. Bufmack sent Dantzler and Wyatt a number of e-mails that expressed his displeasure with the working environment at Amazing and how Amazing had been managed by Dantlzer and Wyatt. (*Id.* ¶¶ 98-108.) Information contained in these e-mails led Dantzler and Wyatt to believe that Bufmack had accessed their e-mail accounts and/or cellular telephones and read information that was not intended for him. (*Id.*) Information obtained by Dantzler and Wyatt also led them to believe that Bufmack

and/or Johnson had exceeded their authorized access to TC's databases and inappropriately downloaded or manipulated information and data contained therein. (*Id.* ¶¶ 112-115.)

In July 2010, Bufmack, Johnson, and Frank Tsu entered into a separate profit-sharing venture to create and market applications and games for cellular telephones. (*Id.* ¶¶ 80, 87.) This entity was called Blacklodge Studios, LLC ("Blacklodge") and is named as a Defendant in this action. (*Id.* ¶ 93.)

### III.  PROCEDURAL HISTORY

Based on the allegations set forth above, on December 17, 2010, TC and Amazing (together "Plaintiffs") initiated the instant lawsuit. (ECF No. 1.) Three days later, Johnson, Bufmack, Frank Tsu, and Margaret Tsu filed a complaint in El Paso County District Court against TC, Dantzler, Wyatt, and TC's accountant. (*See* ECF No. 13 at 2.)

On January 6, 2011, Johnson, Bufmack, Frank Tsu, and Blacklodge (collectively "Defendants") filed a Motion to Dismiss the federal claims brought in the above-captioned action. (ECF No. 5.) Plaintiffs then filed an Amended Complaint. (ECF No. 7.) This Amended Complaint is the operative pleading in this case and brings the following claims against Johnson, Bufmack, and Frank Tsu ("Individual Defendants"): (1) Violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2511 *et seq.*; (2) Violation of the Stored Communications Act, 18 U.S.C. § 2510 *et seq.*; (3) Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; (4) breach of fiduciary duty; and (5) civil conspiracy. Plaintiffs bring a breach of contract claim against only Johnson

and Bufmack.  Plaintiffs also bring a civil theft claim against the Individual Defendants and Blacklodge.  (Am. Compl. pp. 23-28.)  Plaintiffs seek an injunction, statutory and punitive damages, and attorneys' fees.  (*Id*. at 28-29.)

The Court very recently denied Defendants' Motion to Dismiss as moot based on the filing of the Amended Complaint.  (ECF No. 45.)  Defendants have not move to dismiss the Amended Complaint.  Instead, they moved to allow Margaret Tsu to intervene in this action so that they could bring the claims they had asserted in the El Paso District Court case as counterclaims here.  (ECF No. 13.)  Plaintiffs did not oppose Margaret Tsu's intervention and the Court permitted it.  (ECF Nos. 13 & 16.)  Defendants and Margaret Tsu filed their Counterclaims/Third-Party claims on February 22, 2011.  (ECF 17.)

The Individual Defendants and Margaret Tsu filed counterclaims against Plaintiffs as well as a Third-Party Complaint against Dantzler and Wyatt.  (ECF No. 17.)  Margaret Tsu brings claims against TC, Dantzler, and Wyatt for: (1) breach of contract; (2) negligent misrepresentation; (3) fraudulent misrepresentation; and (4) civil theft.  (*Id*. at 21-27.)  Margaret Tsu also brings a claim of intentional interference with contract against Dantzler and Wyatt.  (*Id*. at 22.)  The Individual Defendants bring claims against TC, Dantzler, and Wyatt for breach of fiduciary duty and civil theft.  (*Id*. at 25-27.)  The Individual Defendants also bring a claim seeking judicial dissolution of Amazing.  (*Id*. at 27-28.)  The Individual Defendants and Margaret Tsu seek economic damages, treble damages, and the appointment of a receiver to wind down the business of Amazing and distribute its assets.  (*Id*. at 28-29.)

This case has proceeded through discovery and a Final Pretrial Order has been entered. (ECF No. 42.) The Court has set this matter for a five-day jury trial beginning November 26, 2012. (ECF No. 44.)

## IV.  ANALYSIS

Shortly after the Counterclaims and Third-Party Complaint was filed, TC, Dantzler, and Jarvis ("Movants") filed the instant Motion to Dismiss and/or Compel Arbitration of Margaret Tsu's claims against them. (ECF No. 20.)  The Movants argue that the Agreement which forms the basis for Margaret Tsu's claims contains a valid and enforceable arbitration clause and, therefore, the Court should dismiss this action or stay Margaret Tsu's claims and compel arbitration. (*Id*. at 6.)

Section 2 of the Federal Arbitration Act ("FAA") declares that a written agreement to arbitrate in any contract involving interstate commerce or a maritime transaction "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  Section 4 of the FAA permits a party to an arbitration agreement to "petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." *Id*. § 4.  The Supreme Court has interpreted the FAA as "manifest[ing] a 'liberal federal policy favoring arbitration agreements.'"  *Gilmer v. Interstate/Johnson Lane Group*, 500 U.S. 20, 25 (2002) (quoting *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

The language of the contract defines the scope of disputes subject to arbitration. *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002).  The Agreement at issue

here contains the following provision:

> 13. <u>Arbitration</u>.  Any controversy or claim arising out of or relating to this Agreement or the breach hereof, which cannot be settled by the good faith efforts of the parties to resolve the matter, shall be settled by binding arbitration in Colorado Springs, CO, in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA") by a single arbitrator selected jointly by the parties, or by the Commercial Arbitration Rules of the AAA if the parties cannot jointly select an arbitrator, and judgment upon the award rendered may be entered in any court having jurisdiction thereof.

(ECF No. 20-1 at 5.)

Margaret Tsu's breach of contract claim clearly arises out of the Agreement and therefore falls within the scope of the arbitration clause.  The other claims are not quite as clear.  However, the Tenth Circuit has consistently held that the phrase "arising out of or relating to", such as appears here, means that the parties intended their arbitration agreement to be broadly construed.  *See, e.g., P&P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 871 (10th Cir. 1999).  Courts interpreting arbitration clauses with the "arising out of or related to" language have held that intentional interference claims and negligent and fraudulent misrepresentation claims fall within the scope of those arbitration clauses.  *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967) (fraudulent inducement); *Black & Veatch Int'l Co. v. Warsila NSD N. Am., Inc.*, 1998 WL 953966 (D. Kan. Dec. 17, 1998) (negligent misrepresentation and fraud claims).  Therefore, the Court finds that all of Margaret Tsu's claims against TC fall within the scope of the arbitration clause.  Accordingly, the Court must compel these claims to arbitration.  *See* 9 U.S.C. § 4.

In her response to the Motion, Margaret Tsu admits that the Agreement's

arbitration provision is binding on her and that she is bound to arbitrate her claims against TC.  (ECF No. 22 at 2.)  However, she asks the Court to also compel Jarvis and Wyatt to arbitration because she pleads her claims against them as alter egos of TC.  (*Id.*)  In their reply, Movants state: "the claims against Dantzler and Wyatt are subject to arbitration because Dantzler and Wyatt, as non-parties to the agreement, have sought to enforce the arbitration agreement."  (ECF No. 27 at 3.)  Movants also state:  "In this case, the Court is not confronted with a situation where Tsu has sought to compel arbitration against Dantzler and Wyatt and they have sought to avoid it by claiming that they are not parties to the agreement.  Rather, Dantzler and Wyatt have affirmatively sought to have the claims against them decided in an arbitral forum."  (*Id.*)  Movants ask the Court to compel arbitration of <u>all</u> of Margaret Tsu's third-party claims.  (*Id.* (emphasis added).)

Generally, the Court can only compel to arbitration the signatories of an arbitration agreement.  *See E.I. DuPont De Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 194 (3d Cir. 2001).  However, a non-signatory, such as Jarvis and Wyatt, may affirmatively compel arbitration in certain circumstances.  *See Cherry Creek Card & Party Shop, Inc. v. Hallmark Marketing Corp.*, 176 F.Supp.2d 1091, 1097-98 (D. Colo. 2001).  Movants' filings clearly show a willingness to arbitrate the claims against them, including the claims against Wyatt and Jarvis.[2]  (ECF Nos. 20 & 27.)  The Court finds that the close relationship between Jarvis

---

[2] Because Movants have taken this position and the Court intends to grant the relief they seek, they may be estopped from reversing course at a later point in these proceedings.  *See New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001) (explaining that judicial estoppel "prevents a party from prevailing in one phase of a case on an argument and then relying on a

and Wyatt on the one hand, and TC on the other, coupled with the fact that Margaret Tsu's claims are brought against Jarvis and Wyatt under the theory that TC was simply their alter ego, permit Jarvis and Wyatt to compel arbitration of Margaret Tsu's claims against them. *See Cherry Creek Card*, 176 F.Supp.2d at 1098 (noting that non-signatory could compel arbitration based on a close relationship with the signatory and the fact that the claims were intertwined with the underlying contract obligations).

Accordingly, the Court will compel arbitration of Margaret Tsu's third-party claims against TC, Jarvis, and Wyatt. However, it will not dismiss those claims from this action. The Tenth Circuit has held that, when claims brought in federal court are subject to an enforceable arbitration clause, the district court should stay the claims subject to the arbitration provision rather than dismiss them. *See Adair Bus Sales, Inc. v. Blue Bird Corp.*, 25 F.3d 953, 955 (10th Cir. 1994) (holding that it was procedural error for district court to dismiss claims rather than staying them when compelling arbitration). Therefore, the Court will stay Margaret Tsu's third-party claims against TC, Jarvis, and Wyatt pending arbitration.

Though not explicitly raised in the Motion, the Court believes it should also address whether the remainder of the case will be stayed or will proceed while Margaret Tsu's third-party claims are being arbitrated. Where a court has found that a party's lawsuit contains some claims that raise arbitrable issues and others that do not, the court has considerable discretion with respect to whether it stays the claims that do not raise arbitrable issues or allows them to proceed. *See Moses H. Cone*, 460 U.S. at 20

---

contradictory argument to prevail in another phase.").

n.23.  The Tenth Circuit has stated that district courts considering whether to institute a stay of all claims should determine "whether resolution of [the] arbitrable claims will have a preclusive effect on the nonarbitrable claims that remain subject to litigation" and whether the arbitrable issues predominate over the remaining issues.  *Riley Mfg. Co. v. Anchor Glass Container Corp.,* 157 F.3d 775, 785 (10th Cir. 1998).  "[T]he mere fact that piecemeal litigation results from the combination or arbitrable and nonarbitrable issues is not reason enough to stay [the] entire case." *Id*. at 785.

The Court finds that Margaret Tsu's third-party claims do not predominate over the non-arbitrable claims in this action.  The issues at the heart of the Plaintiffs' Claims and the Defendants' Counterclaims and Third-party Claims are: (1) whether the Individual Defendants improperly accessed Plaintiffs' electronic communications and data; (2) whether the Individual Defendants breached their independent contractor agreements with TC; (3) whether any member of Amazing, including Jarvis and Wyatt on behalf of TC, breached his or its fiduciary duties to the company; (4) whether any member of Amazing, including Jarvis or Wyatt on behalf of TC, committed civil theft; and (5) whether Amazing should be judicially dissolved.  Margaret Tsu's Third-party Claims primarily involve the Loan Agreement and representations that were made to her prior to and during the formation of the Agreement.  While there is certainly factual and legal overlap between these claims, Margaret Tsu's Third-party Claims do not predominate over the remaining issues in this case.  Practically speaking, the Court could have denied Margaret Tsu's request to intervene and her Third-party Claims could have proceeded as an entirely separate action.  Therefore, the Court sees no reason to stay the remaining claims while Margaret Tsu's Third-party Claims are being

arbitrated.

## V.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. The Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), or, in the Alternative to Stay Proceedings and Compel Arbitration (ECF No. 20) is DENIED to the extent it seeks dismissal of Margaret Tsu's Third-party Claims but GRANTED to the extent it seeks to compel arbitration and stay those claims;

2. Third-Party Plaintiff Margaret Tsu's claims against TC LogiQ, Inc., Thomas C. Dantzler, and Jarvis Wyatt are COMPELLED to arbitration;

3. This case is STAYED only as to Third-Party Plaintiff Margaret Tsu's claims against TC LogiQ, Inc., Thomas C. Dantzler, and Jarvis Wyatt;

4. All other claims in this case remain active and all pending deadlines, including the Trial, Final Trial Preparation Conference, and all deadlines associated therewith, are unchanged; and

5. The parties are DIRECTED to ensure that, in all future filings made in this case, the case caption shall be as set forth above.

Dated this 2nd day of March, 2012.

BY THE COURT:

_____
William J. Martinez
United States District Judge